UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | CV 22-825-DMG (PDx) | Date | January 19, 2024 |
| Title | United States of America v. Burgerim Group USA, Inc., et al. | Page | 1 of 8 |

Present: The Honorable  DOLLY M. GEE, UNITED STATES DISTRICT JUDGE

| KELLY DAVIS | NOT REPORTED |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorneys Present for Plaintiff(s) | Attorneys Present for Defendant(s) |
|---|---|
| None Present | None Present |

**Proceedings: IN CHAMBERS—ORDER RE PLAINTIFF'S APPLICATION FOR DEFAULT JUDGMENT [46]**

On February 7, 2022, Plaintiff United States of America filed a Complaint against Defendants Burgerim Group USA, Inc. ("Burgerim USA"), Burgerim Group, Inc. ("Burgerim Inc."), and Oren Loni. [Doc. # 1.] The Complaint seeks a permanent injunction and monetary judgments for civil penalties and consumer redress based on violation of Section Five of the Federal Trade Commission ("FTC") Act and various violations of the FTC's "Franchise Rule," 16 C.F.R. sections 436.5, 436.9(a), and 436.9(c). *Id.* ¶¶ 45–64.

On November 20, 2023, the Court entered an Order for Permanent Injunction and Monetary Judgments for Civil Penalty and Consumer Redress as to Defendant Loni, per the parties' stipulation. [Doc. ## 43, 44 ("Loni Settlement").] Despite being properly served with the Complaint, Burgerim USA and Burgerim Inc. (together, the "Entity Defendants") failed to answer or otherwise appear. [Doc. # 29.] On July 14, 2022, the Clerk entered Default as to both Entity Defendants. [Doc. # 30.] On December 22, 2023, the United States filed a Motion for Default Judgement ("MDJ") against them. [Doc. # 46.] The Court held a hearing on January 19, 2024, at which time the Entity Defendants did not appear and Plaintiff submitted on the tentative ruling.

For the reasons discussed in this Order, the Court **GRANTS** Plaintiff's MDJ.

**I.
BACKGROUND**

Between 2015 and 2019, Defendants—the Entity Defendants and Loni, their Chief Executive Officer ("CEO")—sold at least 1,550 franchises of their casual, fast food burger restaurant. MDJ at 6[1]; Compl. ¶¶ 18, 22, 35. Under their business model, they "lure[d] would-be entrepreneurs" into paying hefty franchise fees to open their franchises, many of whom relied on

---

[1] All page citations herein refer to the page numbers inserted by the CM/ECF system.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | CV 22-825-DMG (PDx) | Date | January 19, 2024 |
| Title | United States of America v. Burgerim Group USA, Inc., et al. | Page | 2 of 8 |

loans to do so. Compl. ¶ 2. In many instances, franchisees paid Defendants a fee between $50,000 and $70,000 for a single franchise location. *Id.* ¶ 23. That fee, however, did not include other costs such as securing a location, constructing the restaurant, outfitting it with necessary equipment, and obtaining products and supplies. *Id.* ¶ 25. Defendants required franchisees to use specific building designs and equipment. *Id.* ¶ 26.

Defendants advertised their franchises as a "business in a box," and represented to prospective franchisees that no prior business experience was required to operate one. *Id.* ¶ 28. They also intentionally downplayed the financial risk of their operation in various ways. *Id.* ¶¶ 32–34. Defendants provided incentives to purchase more than one Burgerim franchise, and targeted military veterans by offering discounts to them as well. *Id.* ¶¶ 23–24. They purported to offer refunds if the franchisees could not open their restaurants, but did not honor their process to do so. *Id.* ¶¶ 2, 4, 34. The "overwhelming majority" of the Burgerim franchises never opened for business. *Id.* ¶ 4.

The FTC's so-called "Franchise Rule" requires a franchisor to provide prospective franchisees with a basic Franchise Disclosure Document ("FDD") "containing certain mandatory disclosures, a key purpose of which is to enable prospective franchisees" to adequately "assess the risks" of the arrangement. *Id.* ¶¶ 12, 36. Defendants consistently provided deficient FDDs. *Id.* ¶¶ 36–39. Defendants' activities have caused many prospective franchisees to incur significant debt they cannot repay, or ruined credit. *Id.* ¶ 41. They have been banned and/or sanctioned in several states, but continue to advertise the franchise opportunity on their website. *Id.* ¶¶ 42–43.

## II.
## DISCUSSION

**A.      Federal Rule of Civil Procedure 55(b)(2), Local Rule 55-1, and the *Eitel* Factors**

The United States has complied with the procedural requirements applicable to default judgments. *See* Fed. R. Civ. P. 55(b)(2); C.D. Cal. L.R. 55-1; Decl. of Marcus P. Smith ISO MDJ ¶¶ 1–6 [Doc. # 46-2 ("Smith Decl.")]. It has also shown that the *Eitel* factors weigh in favor of entering a default judgment against the Entity Defendants. *See Eitel v. McCool*, 782 F.2d 1470, 1472 (9th Cir. 1986). In *Eitel*, the Ninth Circuit set forth a number of factors that courts may consider when evaluating a default judgment motion: (1) the possibility of prejudice to the plaintiff; (2) the merits of the plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits. *Id.* at 1471–72.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | CV 22-825-DMG (PDx) | Date | January 19, 2024 |
| Title | United States of America v. Burgerim Group USA, Inc., et al. | Page | 3 of 8 |

### 1. Possibility of Prejudice to Plaintiff

Plaintiff will be prejudiced without a default judgment—no other enforceable form of relief against the Entity Defendants exists at this stage of the proceedings and it has already incurred expenses investigating the Entity Defendants and pursuing this litigation. *See* MDJ at 17; *PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002). Absent entry of a default judgment, the USA is likely to be prejudiced given the Entity Defendants' failure to appear, plead, or otherwise defend within the time allowed. *See* MDJ at 17.

The first factor therefore weighs in favor of default judgment.

### 2. Merits of Plaintiff's Substantive Claim and Sufficiency of Plaintiff's Complaint

Since default has been entered, the Court presumes that Plaintiff's allegations are true. *See Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977) ("[U]pon default[,] the factual allegations of the complaint, *except those relating to the amount of damages*, will be taken as true.") (emphasis added).

#### a. Heightened Pleading Standard

Federal Rule of Civil Procedure 9(b) mandates a heightened pleading standard for cases sounding in fraud, such as this one. *See Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009). Under Rule 9(b)'s heightened pleading standard, "a party must state the particularity of the circumstances constituting fraud," meaning that the "pleading must identify the who, what, when, where, and how of the misconduct charged." *United States ex rel. Cafasso v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 (9th Cir. 2011) (internal citations and quotation marks omitted). Rule 9's pleading standards apply to claims for violations of the FTC Act. *See F.T.C. v. Lights of Am., Inc.*, 760 F. Supp. 2d 848, 854 (C.D. Cal. 2010).

Since Plaintiff alleges a common enterprise between the Entity Defendants, it need not allege specific conduct of each one. *See* Compl. ¶ 20; *F.T.C. v. Am. Fin. Benefits Ctr.*, 324 F. Supp. 3d 1067, 1077 (N.D. Cal. 2018) (citing *FTC v. OMICS Grp. Inc.*, 302 F. Supp. 3d 1184 (D. Nev. 2017)). It still must provide sufficient details, however, of the allegedly fraudulent acts such that they are pleaded with particularity.

While Plaintiff's allegations could have been more specific, the Court concludes that they meet Rule 9's requirements. The allegations are somewhat general, but they do identify the specific patterns and practices of Defendants' fraudulent conduct, and explain *why* each type of

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | CV 22-825-DMG (PDx) | Date | January 19, 2024 |
|---|---|---|---|
| Title | *United States of America v. Burgerim Group USA, Inc., et al.* | Page | 4 of 8 |

conduct was problematic. *See, e.g.*, Compl. ¶¶ 23 (Defendants' misrepresentations caused prospective franchisees to take out loans), 24 (incentives targeted vulnerable individuals such as veterans), 25 (unexpected additional costs built into the scheme), 28 (predatory marketing tactics), 32 (written refund and cancellation agreements breached). The Complaint also contains specific quotes from Burgerim's website and the "Brand Book," and the detailed descriptions of the omissions and misrepresentations in the FDDs. *See* Compl. ¶¶ 28–30 (quotes from website and Brand Book), 54– 63 (details about FDDs).

The purpose of Rule 9 is that the pleadings "be specific enough to give defendants notice of the particular misconduct . . . so that they can defend against the charge and not just deny that they have done anything wrong." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (citing *Bly-Magee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001)) (internal quotation marks omitted). Here, the Complaint does so. The United States has pleaded allegations that explain the "specific descriptions of the representations made" and "the reasons for their falsity." *See Blake v. Dierdoff*, 856 F.2d 1365 (9th Cir. 1988).

Rule 9 does not require the United States to allege the granular facts of every false or misleading statement made to each victim of Defendants' scheme. *Cf. Fed. Trade Comm'n v. Am. Fin. Benefits Ctr.*, 324 F. Supp. 3d 1067, 1078 (N.D. Cal. 2018) ("The FTC is not required to allege the specific representations made to each individual consumer, however. Indeed, such a requirement would likely prove fatal to large-scale consumer protection actions. Likewise, a plaintiff is not required to allege all facts supporting each and every instance of allegedly fraudulent conduct.") (internal quotation marks and citations omitted); *Vess*, 317 F.3d at 1106–07 (holding that allegations did not meet Rule 9 standard where manner in which defendant misrepresented unspecified medical data).

In other words, the pleadings identify Defendants' patterns of conduct (the "who," "what," and "how"), the time period in which that conduct occurred on a systemic basis (the "when"), and that the conduct occurred through the website, Brand Book, other marketing materials, through verbal communications, and through written agreements (the "where" and "how"). *Cf. United States ex rel. Cafasso*, 637 F.3d at 1055. The Court therefore concludes that the United States' pleadings satisfy Rule 9, and will now turn to the individual claims alleged.

   b.   **Section Five of the FTC Act**

Section 5(a) of the FTC Act prohibits "unfair or deceptive acts or practices in or affecting commerce." 15 U.S.C. § 45(a). Under this provision, the FTC "will find an act or practice deceptive if, first, there is a representation, omission, or practice that, second, is likely to mislead

Case 2:22-cv-00825-DMG-PD   Document 48   Filed 01/19/24   Page 5 of 8   Page ID #:335

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | CV 22-825-DMG (PDx) | Date | January 19, 2024 |

| Title | United States of America v. Burgerim Group USA, Inc., et al. | Page | 5 of 8 |

consumers acting reasonably under the circumstances, and third, the representation, omission, or practice is material." *F.T.C. v. Pantron I Corp.*, 33 F.3d 1088, 1095 (9th Cir. 1994) (citation omitted); *see also F.T.C. v. Gill*, 265 F.3d 944, 950 (9th Cir. 2001). Express claims are presumed to be material. *See Pantron I*, 33 F.3d at 1095–96; *see also* MDJ at 8.

A representation is likely to mislead consumers when "(1) the representation is false; or (2) the advertiser lacked a reasonable basis for its claims." *United States v. MyLife.com, Inc.*, 567 F. Supp. 3d 1152, 1164 (C.D. Cal. 2021); *see also F.T.C. v. Cyberspace.com, LLC*, 453 F.3d 1196, 1201 (9th Cir. 2006) (a solicitation may meet this criteria even if not strictly false).

Here, the Complaint alleges "numerous claims to prospective franchisees" that were either expressly false or likely to mislead. *See* MDJ at 18. For example, the Entity Defendants promised to refund franchise fees if a customer was unable to open for business, but did not do so in the majority of cases. *See* Compl. ¶ 32. In support of its MDJ, the United States provides a "Refund List" of franchisees that it received in discovery, indicating only 286 franchisees were ever refunded. *See* Decl. of Christine Barker ISO MDJ ¶¶ 2, 3 [Doc. # 46-3 ("Barker Decl.")]. Some customers received a signed letter from Loni promising that the Entity Defendants would refund their fee, on which they reasonably relied. MDJ at 18–19; Compl. ¶ 34 (showing repeated requests for refunds over many months).

Overall, the allegations and evidence provided in support of the MDJ satisfy the elements of Plaintiff's Section Five claim.

    c.  **The Franchise Rule**

As previously stated, *see supra* Section I, the "Franchise Rule," at 16 C.F.R. Part 436, requires a franchisor (as defined in the regulation) to provide prospective franchisees with a FDD containing 23 specific categories of information. *See* MDJ at 9; 16 C.F.R. §§ 436.5(a)–(w). The FDD must be current and dated. MDJ at 10; 16 C.F.R. §§ 436.2(a), 436.3(e)(6). Additional disclosures are required if the franchisor makes any Financial Performance Representations ("FPRs"). *See* 16 C.F.R. § 436.9(c). It is illegal for franchise sellers to make any representations contradicting the information contained in their FDD. *Id.* § 436.9(a).

The Complaint alleges that the Entity Defendants had knowledge of the requirements of this rule, and nonetheless failed to disclose all required information. Compl. ¶¶ 54–56 (Count Two). It also alleges that Entity Defendants unlawfully did not include their FPRs in the FDDs despite being required to do so. *Id.* ¶¶ 58–60 (Count Three). They also made claims or

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | CV 22-825-DMG (PDx) | Date | January 19, 2024 |
| Title | United States of America v. Burgerim Group USA, Inc., et al. | Page | 6 of 8 |

representations in connection with the sale of their franchises that contradicted disclosure in their FDDs. *Id.* ¶¶ 62–64 (Count Four).

Plaintiff's "Franchise Rule" claims, Counts Two through Four, are also adequately pleaded. *See* MDJ at 19–21.

### 3. The Sum of Money at Stake

The next *Eitel* factor examines the amount of money at stake in the action relative to the gravity of the Entity Defendants' conduct. *See PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1176 (C.D. Cal. 2002). "Default judgment is disfavored where the sum of money at stake is too large or unreasonable in relation to defendant's conduct." *Vogel v. Rite Aid Corp.*, 992 F. Supp. 2d 998, 1012 (C.D. Cal. 2014).

The United States requests that this Court issue a permanent injunction as set forth in the Complaint, and award $48,476,689 in consumer redress and $7,750,000 in civil penalties. *See* MDJ at 22. Large amounts can be awarded on default judgment when plaintiff provides a detailed justification for those damages through a declaration and supporting evidence. *See NewGen v. State Cig.*, 840 F.3d 606, 617 (9th Cir. 2016). The United States has done so here. *See* Barker Decl. ¶¶ 2–5 (describing franchise fees collected and amount of refunds issued). The penalty sought—$5,000 for each franchise sale—is reasonable in light of the statutory maximum of $50,120 per violation. *See* MDJ at 22; 16 C.F.R. § 1.98(d) (authorizing $50,120 in penalties for each Franchise Rule violation).

This *Eitel* factor favors entry of default judgment against the Entity Defendants.

### 4. Remaining Factors

There is no possibility of a dispute concerning the material facts of the case because the well-pleaded factual allegations are presumed to be true. This *Eitel* factor thus weighs in favor of default judgment.

Nor is there any possibility of excusable neglect in this case. This factor favors default judgment where the defendant has been properly served or the plaintiff demonstrates the defendant is aware of the action. *See Wecosign, Inc. v. IFG Holdings, Inc.*, 845 F. Supp. 2d 1072, 1082 (C.D. Cal. 2012). The Entity Defendants were properly served, as discussed above, and excusable neglect appears highly unlikely in light of their CEO Loni's settlement of this matter.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | CV 22-825-DMG (PDx) | Date | January 19, 2024 |
| Title | United States of America v. Burgerim Group USA, Inc., et al. | Page | 7 of 8 |

Lastly, notwithstanding the strong policy presumption in favor of a decision on the merits, the Entity Defendants' failure to defend themselves in this action makes a decision on the merits impractical. *See* MDJ at 24. Therefore, this factor does not prevent the imposition of a default judgment.

* * * * *

Given the foregoing, the Court concludes that the entry of a default judgment against the Entity Defendants is appropriate.

**B.     Remedies**

The FTC Act endows courts with the authority to order Plaintiff's requested relief. *See* 15 U.S.C. §§ 57b(a)(1)–(b); *OMICS Grp., Inc.*, 374 F. Supp. 3d at 1013–14 (federal courts have "broad authority to fashion appropriate remedies for violations of the [FTC] Act") (citing *Pantron I*, 33 F.3d at 1102); *see also FTC v. Inc21.com Corp.*, 745 F. Supp. 2d 975, 1011 (N.D. Cal. 2010) (courts often award restitution in full amount of funds lost by consumers under FTC Act).

**1.     Monetary Relief**

Since the Entity Defendants operated a common enterprise, they shall be jointly and severally liable for the monetary judgment. *See* MDJ at 22, n.3 (citing *FTC v. Network Servs. Depot, Inc.*, 617 F.3d 1127, 1142–43 (9th Cir. 2010)).

Consumers paid the Entity Defendants $57,707,244 in franchise fees from 2015 through July 2019. Smith Decl. ¶ 7; Barker Decl. ¶¶ 4–5. Of that amount, they only issued $9,230,555 in refunds. Barker Decl. ¶ 2–3. The difference is the requested amount of $48,476,689. *See* MDJ at 28. The requested civil penalties are far below the amount authorized by the FTC's Rule of Practice. *See* MDJ at 29; 16 C.F.R. § 1.98(d) (civil penalties inflation adjustment effective Jan. 10, 2024).

Since the United States has proved its damages, *see supra* II.A.3, and its request for a $5,000 penalty per violation is reasonable, the Court grants its request for consumer redress in the amount of $48,747,689 and a civil penalty of $7,750,000. *See also* MDJ at 26–30.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | CV 22-825-DMG (PDx) | Date | January 19, 2024 |
|---|---|---|---|
| Title | United States of America v. Burgerim Group USA, Inc., et al. | Page | 8 of 8 |

### 2. Injunctive Relief

Courts may issue a permanent injunction if there exists "some cognizable danger of recurrent violation" or "some reasonable likelihood of future violations. *See OMICS Grp. Inc.*, 374 F. Supp. 3d at 1013–14 (citations omitted); 15 U.S.C. § 53(b) (FTC Act provides for permanent injunctive relief).

When considering awarding a permanent injunction under the FTC Act, courts may consider "the degree of scienter involved, whether the violative act was isolated or recurrent, whether the defendant's current occupation positions him to commit future violations, the degree of harm consumers suffered from the unlawful conduct, and the defendant's recognition of his own culpability and sincerity of his assurances, if any, against future violations. *OMICS Grp. Inc.*, 374 F. Supp. 3d at 1014 (citing *S.E.C. v. Murphy*, 626 F.2d 633, 655 (9th Cir. 1980)).

Here, a permanent injunction is warranted. As a practical matter, the Court's injunction against Loni contains broad language that likely applies to the Entity Defendants as well, since he is a corporate officer. *See* Loni Settlement; MDJ at 25. The requested injunction will prevent Entity Defendants from participating in the exact conduct that gives rise to this lawsuit, such as the sale of additional franchises, making misrepresentations in relation to any business opportunity, and standard provisions for FTC compliance reporting and monitoring. This is an appropriate sanction for their conduct. *See* MDJ at 25–26.

The Court will grant a permanent injunction whose terms shall be set forth in the Judgment.

### III. CONCLUSION

In light of the foregoing, the Court **GRANTS** Plaintiff's MDJ against the Entity Defendants. A separate judgment shall issue.

**IT IS SO ORDERED.**